PETER H. CHANDLER *vs.* WILLIAM DOODY & another.

Under the regulations concerning pilotage in the schedule annexed to the St. of 1862, *c.* 176, that " every vessel inward bound," with certain exceptions, " shall receive the first pilot, holding a commission for her port of destination, that may offer his services, and shall be holden to pay such pilot the regular fees for pilotage, whether his services be accepted or not;" "and in case any vessel liable to pilotage should refuse to take a pilot, it shall be the duty of the pilot to inform said vessel that she will be holden to pay the regular fees for pilotage, whether his services are accepted or not; " the giving of the information by the pilot to the refusing vessel is in every case a condition precedent to his right to hold her liable for fees; and it is immaterial what her master knows of the provisions of the statute by information from other sources.

CONTRACT on the St. of 1862, *c.* 176,* against the owners of the brig America, for pilotage; submitted to the judgment of the superior court, and of this court on appeal, upon facts agreed, of which the following is the material part :

On March 27, 1867, the America, a British registered brig of three hundred tons burden, owned by British subjects, and not sailing under a coasting license, was off and bound into the port of Boston on a voyage from Halifax, Nova Scotia, under the command of the defendant Doody as her master, when she was spoken by the plaintiff (who was a duly commissioned pilot for the harbor of Boston, and was the first pilot who offered his services to her) with an offer of his services to conduct her into port, which offer Doody refused. The plaintiff did not inform

---

* The material parts of Regulations 4 and 5 in the Schedule of General Regulations for Pilotage, annexed to the St. of 1862, *c.* 176, are as follows :

"4. Every vessel inward bound excepting the vessels provided for in sections 17 and 18 of these general regulations [within which exceptions the brig America in this case was not included] shall receive the first pilot holding a commission for her port of destination, and shall be holden to pay to such pilot the regular fees for pilotage, whether his services be accepted or not."

"5. It shall be the duty of every pilot to first board vessels (irrespective of size) having signals set for a pilot. When there are no signals to be seen, then the pilots are to offer their services to the first vessel which they can board; and in case any vessel liable to pilotage should refuse to take a pilot, it shall be the duty of the pilot to inform said vessel that she will be holden to pay the regular fees for pilotage, whether his services are accepted or not."

the vessel that she would be holden to pay the regular fees for pilotage whether his services were accepted or not; nor did Doody ask him in respect thereto. But Doody had often before sailed into Boston harbor with the brig, and had been previously told in conversation, but not with pilots, that, if he did not take a pilot when spoken, the vessel would have to pay pilotage, though not distance money.

Other facts agreed as to the place where the plaintiff spoke the brig are now immaterial.

*J. B. Richardson*, for the plaintiff.

*T. K. Lothrop & R. R. Bishop*, for the defendants.

CHAPMAN, C. J. If we assume that the plaintiff, being a commissioned pilot, offered his services to the defendant at a proper time and place, (a point which we do not find it necessary to decide,) yet the St. of 1862, *c.* 176, requires that, in case any vessel liable to pilotage shall refuse to take a pilot, it shall be the duty of the pilot to inform the vessel that she will be holden to pay the regular fees for pilotage, whether his services are accepted or not. The plaintiff did not give such information; and for this reason it is contended that this action cannot be maintained. The court are of opinion that this is a valid objection to the action. The provision is absolute in its terms, and it requires that the information shall be given by the pilot to the vessel against which he intends to make his claim. It does not purport to be merely directory; but its most obvious construction is, that the giving of the information is a condition precedent to the liability of the vessel.

The plaintiff offered to prove that the defendant knew of the provisions of the statute by information from other sources. But general information as to the law, coming from other and independent sources, would be likely to be less definite than that which the statute prescribes; it would not inform the defendant that the plaintiff intended to make the claim in the particular case, nor could it furnish any *locus pœnitentiœ.* The obvious policy of the act is, not only to enable, but to induce vessels to take a pilot, as a provision for the safety of navigation; and this policy would furnish a reason of some weight for

requiring the pilot to state the liability, as an inducement to the master to change his mind and accept his offer of service. But whatever may be the reason of the provision, we think its reasonable construction is, that the pilot must give the information in every case where he intends to enforce his claim.

*Judgment for the defendants.*